# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GISELLE RODRIGUEZ, individually and on behalf of all others similarly situated, | ) ) ) |
| Plaintiff, | ) Case No. 1:25-cv-04180 ) |
| v. | ) Hon. Jorge L. Alonso ) |
| LIVING PROOF, INC., | ) Magistrate Heather K. McShain ) |
| Defendant. | ) |

## PLAINTIFF'S RESPONSE IN OPPOSITION
## TO DEFENDANT'S MOTION TO DISMISS

Dated: July 23, 2025

Keith J. Keogh
Theodore H. Kuyper
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
keith@keoghlaw.com
tkuyper@keoghlaw.com

Scott D. Owens (*Admitted Pro Hac Vice*)
Mathew Bobulsky (*Admitted Pro Hac Vice*)
SCOTT D. OWENS, P.A.
2750 N. 29th Avenue, Suite 209A
Hollywood, Florida 33020
(954) 589-0588
scott@scottdowens.com
matthew@scottdowens.com

John R. Habashy (*Pro Hac Vice to be filed*)
LEXICON LAW
633 W. 5th Street, 28th Floor
Los Angeles, California 90071
(213) 223-5900
john@lexiconlaw.com

*Attorneys for Plaintiff and the Putative Class*

232918_3

Plaintiff, Giselle Rodriguez ("Plaintiff"), responds to Defendant Living Proof, Inc.'s ("Living Proof") motion to dismiss pursuant to Rule 12(b)(6) (ECF Nos. 14-15) as follows:

## INTRODUCTION

Living Proof's motion misstates what is required to plead a violation of Illinois Biometric Information Privacy Act ("BIPA") Section 15(b), misrepresents that Plaintiff's claim is "based on her selfie upload," and ignores nearly all of her allegations.  Still, the Court need not look any further than the motion's Table of Contents to see Living Proof has "fair notice of what the … claim is and the grounds upon which it rests," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), as even the argument headings show Living Proof understands the claim is for violating 15(b) and the basis for the claim is capturing scans of consumers' face geometry through its Hair Quiz Feature.  Furthermore, the allegations support a "reasonable inference" Living Proof "is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Nothing more is required.  As a result, Living Proof's motion must be denied.

## STATEMENT OF FACTS

Each time a consumer uses Living Proof's Hair Quiz Feature, which is available via Living Proof's website, the person must turn on and use their device's camera to take a real-time photo of their face (*i.e.* a selfie) via an interface on the website.  ECF No. 1-1 ("*Compl.*") ¶¶ 20, 22 (incl. Fig. 1), 47.  The Hair Quiz Feature then uses algorithms to detect and capture from the selfie a scan of the person's unique facial geometry, such as the length, width, depth, and location of various facial features or landmarks.  *Id.* ¶¶ 19, 23, 48.  Those geometric attributes captured from the selfie are a distinct numerical representation of the unique shape and geometry of the person's face, including the contours of its unique facial landmarks and features.  *Id.* ¶ 29.

Living Proof stores this face-geometry data, then accesses and uses it with machine-

1

learning and augmented-reality to perform a facial analysis and hair analysis, which Living Proof uses to generate a report of the person's hair-related characteristics and determine which Living Proof products to recommend the person purchase. *Id.* ¶¶ 21, 24-25 (incl. Fig. 2), 49, 51. Living Proof requires that the person send Living Proof their name, age, and email address in order to see the product recommendations. *Id.* ¶¶ 26, 50-51. Living Proof also accesses and uses the face geometry to improve the Hair Quiz Feature technology and develop future product recommendations. *Id.* ¶¶ 27-28. Living Proof admits it collects biometric information in connection with the Hair Quiz Feature for the purpose of uniquely identifying individuals. *Id.* ¶ 42. But Living Proof did this without users' knowledge or consent. *Id.* ¶¶ 4, 31, 41, 43-44, 52-56.

## LEGAL STANDARD

Under Rule 8, "a plaintiff need only provide 'a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *In re Zimmer Nexgen Knee Implant Prods. Liab. Litig.*, 2012 U.S. Dist. LEXIS 117239, at *24 (N.D. Ill. Aug. 16, 2012) (quoting *Twombly*, 550 U.S. at 555). The Supreme Court has "reiterated that '[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)). "Accordingly, under Rule 8's general notice-pleading regime, a plaintiff need not provide detailed factual allegations." *In re Zimmer*, 2012 U.S. Dist. LEXIS 117239 at *26. Together, these cases simply "mean that 'at some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.'" *Brooks*, 578 F.3d at 581. Further, "Rule 8 does not demand that a plaintiff … plead facts … he has no way of knowing prior to discovery." *Alexander v. United*

2

*States*, 721 F.3d 418, 424 (7th Cir. 2013).

"When evaluating the sufficiency of a complaint, the court reads its allegations in the way most favorable to plaintiff, accepting well-pleaded allegations as true," *In re Zimmer*, 2012 U.S. Dist. LEXIS 117239 at \*26-27, "and drawing all possible inferences in [plaintiff's] favor," *Foxxxy Ladyz Adult World, Inc. v. Vill. of Dix*, 779 F.3d 706, 711 (7th Cir. 2015).

## ARGUMENT

### I. Plaintiff Adequately Alleges Living Proof Violated Section 15(b) Of BIPA.

Living Proof's argument to dismiss the Section 15(b) claim tellingly begins by *conceding* Plaintiff alleges Living Proof captured scans of face geometry. ECF No. 15 ("*Mot.*") at 6 (citing *Compl.* ¶ 23).[1] Living Proof labels this allegation "conclusory," arguing "Plaintiff pleads no plausible basis for" it. *Id.* at 6. This argument fails as Plaintiff's factual allegations support a "'reasonable inference that [Living Proof] is liable for the misconduct alleged,'" and thus establish that "facial plausibility exists." *In re Zimmer*, 2012 U.S. Dist. LEXIS 117239 at \*28 (quoting *Iqbal*, 556 U.S. at 678). Living Proof simply ignores those allegations.

As an initial matter, the allegation Living Proof "capture[d]" and "obtained" Plaintiff's face geometry (*Compl.* ¶¶ 4, 23) ***is*** a "factual allegation" the Court must take "as true." *King v. PeopleNet Corp.*, 2021 U.S. Dist. LEXIS 207694, at \*19 (N.D. Ill. Oct. 28, 2021). *King* involved a 15(b) claim based on PeopleNet's face-scan timeclock. *Id.* at \*1, \*3-4. It refused to dismiss, reasoning "the complaint alleges … PeopleNet collected and obtained [plaintiff's biometric data]. I accept that factual allegation as true, and it's reasonable to infer that PeopleNet … was doing the capturing and obtaining" because she alleged it occurred through PeopleNet's timeclock, thus "spell[ing] out how PeopleNet obtained [her] information." *Id.* at \*19 (citations omitted); *accord*

---

[1] All citations to Living Proof's motion to dismiss use the pagination in the footer of the document. All emphases herein are Plaintiff's unless otherwise noted.

3

*Hazlitt v. Apple Inc.*, 500 F. Supp. 3d 738, 751 (S.D. Ill. 2020) ("*Hazlitt I*") ("The Court accepts as true Plaintiffs' allegations that Apple collected … the biometric data extracted from Plaintiffs' photos.").

So too here as the allegations spell out how Living Proof captured Plaintiff's biometric data—through its Hair Quiz Feature. Specifically, each time a consumer uses the Hair Quiz Feature on Living Proof's website, the consumer must turn on and use their device's camera to take a real-time selfie photo of their face via an interface on the website, *Compl.* ¶¶ 20, 22 (incl. Fig. 1), 47, at which point the Feature uses algorithms to detect and capture a scan of the person's unique facial geometry, such as the length, width, depth, and location of various facial features or landmarks, *id.* ¶¶ 19, 23, 48. Those geometric attributes Living Proof captures are a distinct numerical representation of the unique geometry of the person's face, including the contours of unique facial landmarks and features. *Id.* ¶ 29. Living Proof stores, accesses, and uses this face-geometry data for a facial analysis and hair analysis, which Living Proof uses to generate a report of the person's hair-related characteristics and determine which products to recommend the person purchase. *Id.* ¶¶ 21, 24-25 (incl. Fig. 2), 49, 51. Separately, Living Proof accesses and uses the face geometry to improve the Hair Quiz Feature and develop future product recommendations. *Id.* ¶¶ 27-28. Removing any theoretical doubt, "Living Proof *admits* it collects biometric information in connection with the Hair Quiz Feature." *Id.* ¶ 42. But Living Proof did this without Plaintiff's or the class members' knowledge or consent. *Id.* ¶¶ 4, 31, 41, 43-44, 52-56.

Those allegations suffice to plead capture under 15(b). In *Cothron v. White Castle*, 216 N.E.3d 918 (Ill. 2023), the Illinois Supreme Court construed the verbs in 15(b) and concluded "capture" means "to take, seize, catch." *Id.* at 924. The allegations above plead Living Proof captured the data by "tak[ing and] seiz[ing]" it from Plaintiff's and the class members' selfies

4

232918_3

without their knowledge or consent. *Id.*; *see also Straits Fin. LLC v. Ten Sleep Cattle Co.*, 900 F.3d 359, 369 (7th Cir. 2018) ("[w]e apply the relevant decisions of the Illinois Supreme Court").

They also plead Living Proof "otherwise obtained" the data. *Figueroa v. Kronos Inc.*, 454 F. Supp. 3d 772 (N.D. Ill. 2020), for example, refused to dismiss the 15(b) claim, reasoning it "allege[d] that Kronos 'stored,' 'used,' and 'disclosed' Plaintiffs' biometric data, and to have done those things Kronos necessarily first had to 'obtain' the data." *Id.* at 784 (citation omitted). Other courts have relied on the same logic in holding plaintiff pled defendant obtained data. *See Vance v. Amazon.com, Inc.*, 525 F. Supp. 3d 1301, 1313 (W.D. Wash. 2021) ("*Amazon.com I*") ("to have stored or used the data, [Amazon] necessarily first had to 'obtain' the data") (cleaned up); *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1297 (W.D. Wash. 2021) ("*Microsoft I*") (same).

Plaintiff also pleads Living Proof gained control of the data. *Cothron* observed the verbs in 15(b) "all mean to gain control." 216 N.E.3d at 923. For example, *Hazlitt I* refused to dismiss a 15(b) claim, reasoning "[t]he Court accepts as true Plaintiffs' allegations that Apple … exercised exclusive control over the biometric data extracted from Plaintiffs' photos." 500 F. Supp. 3d at 751. It further reasoned Apple did so using proprietary software Apple exclusively controlled and barred users from disabling, "Apple provided users no … control over" the data, "Apple alone could access" the data "or disable its collection," "Apple's software cannot be used as intended without biometric data automatically being collected," and "device users had no ability to disable the collection (or notice of collection)." *Id.* at 750; *accord Hazlitt v. Apple Inc.*, 543 F. Supp. 3d 643, 652 (S.D. Ill. 2021) ("*Hazlitt II*") (re-adopting same analysis); *Powell v. Shisheido*, 2:21-cv-02295-CSB-EIL (C.D. Ill. Aug. 22, 2022) at 13-14 ("it can be plausibly inferred that Defendant controls … data generated at its own websites"), attached as **Exhibit 1**. Plaintiff's allegations here mirror those allegations from *Hazlitt I* and *II*. *See Compl.* ¶¶ 20, 23, 31-44, 52-54; *see also id.* ¶¶

5

55-56, 66-70.  Thus, Plaintiff adequately pleads Living Proof gained control of the data.

In short, Plaintiff's allegations are far more detailed than Rule 8 requires, and she has therefore pled a plausible claim for Living Proof capturing, collecting, and otherwise obtaining biometric data without prior informed written consent, in violation of Section 15(b).  *See Ex. 1* at 12 (*Powell v. Shisheido*, holding "allegation [a 100-point geometric map of the user's face] was created through Defendant's website amounts to a plausible allegation that Defendant actively captured and/or collected biometric identifiers"); *Rivera v. Amazon Web Servs.*, 2023 U.S. Dist. LEXIS 129517, at *1-3, *12 n.3, *13 (W.D. Wash. July 26, 2023) (plaintiffs plausibly pled "Amazon 'collected' their data" by alleging "Amazon's program, Rekognition, 'accesses' images after they have been uploaded, and 'extract[s] the facial geometry of the individuals pictured'"); *Davis v. e.l.f. Cosm., Inc.*, 2024 U.S. Dist. LEXIS 94318, at *15 (N.D. Ill. May 28, 2024) ("allegations that Defendant's Virtual Try-On tool [on its website] works by capturing … or otherwise obtaining (however temporarily) Plaintiff's facial geometry (which is a defined biometric identifier) … are sufficient to state a plausible violation of Section 15(b)").

Living Proof suggests *Kukovec v. Estée Lauder Co.*, 2022 U.S. Dist. LEXIS 202212 (N.D. Ill. Nov. 7, 2022) supports dismissal because it alleged a specific reason the defendant needed to use facial data.  *Mot.* at 7 n.1.  In fact, however, *Kukovec* held "it's enough that plaintiff alleged the use of the try-on tool on defendant's website, and that defendant … collected biometric data through use of the tool." *Kukovec*, 2022 U.S. Dist. LEXIS 202212 at *19-20.  Here, Plaintiff alleges much more than that, including the reason Living Proof needed to use her face geometry— "to perform a facial … analysis." *Compl.* ¶ 49.

Ultimately, Living Proof's argument is just a complaint that Plaintiff does not allege *why* it needed face geometry "to deliver hair analysis or hair care recommendations." *Mot.* at 7 (arguing

6

"there is no plausible reason why" it needed face geometry for that, and the notion face geometry was necessary is "implausible"). These arguments fail, both as a matter of law and fact.

First, they misunderstand what Rule 8 requires. "[T]he 'plausibility' requirement 'does not impose a probability requirement.'" *In re Zimmer*, 2012 U.S. Dist. LEXIS 117239 at *29 (quoting *Twombly*, 550 U.S. at 556 ("a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable")); *Iqbal*, 556 U.S. at 678 (plausibility "is not akin to a 'probability requirement'"); *Alexander*, 721 F.3d at 424 ("While … Alexander's tale would undoubtedly seem more *probable* if he offered some reason for the agents' animus … , probability is not the standard.") (emphasis in original). Thus, "'[p]lausibility' … does not imply that the district court should decide … which version is more likely than not," nor is it appropriate to "allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

Second, Section 15(b) does not require that an entity "need" biometric data. 740 ILCS 14/15(b). So there can be no credible argument that Rule 8 requires a litigant to allege facts explaining *why* defendant "needed" the data it captured.

Third, Living Proof's argument is based on the false-premise that the face geometry was "need[ed] … to deliver hair analysis or hair care recommendations." *Mot.* at 7. This is misdirection—Plaintiff alleges the face geometry was needed "to perform a *facial* … analysis." *Compl.* ¶ 49.

Fourth, even accepting *arguendo* Living Proof's false-premise, there are many reasons it might need to scan a person's face geometry for a hair analysis. For instance, the algorithm may use the face geometry to identify the boundaries of the person's hair-adjacent facial features and determine where those features end and the hair begins, in order to differentiate the hair from the

7

face and background. After all, a hair analysis based on a person's cheek or lips would be useless. In any event, however, these are facts Plaintiff "has no way of knowing prior to discovery," and thus, "Rule 8 does not demand" that she plead them. *See Alexander*, 721 F.3d at 424.

Next, Living Proof argues "[i]f Plaintiff had 'legitimate reasons to suspect'" it collected face geometry, "she would 'surely possess some information … that triggered [her] suspicion'" she could allege. *Mot.* at 8 (quoting *Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 969 (N.D. Ill. 2020)). Setting aside that the quote from *Heard* conflicts with the surreptitious nature of BIPA violations, this argument fails as Plaintiff *does* allege such information—"Living Proof *admits* it collects biometric information in connection with the Hair Quiz Feature." *Compl.* ¶ 42.

Further, *Heard* and *Jacobs v. Hanwha Techwin Am., Inc.*, 2021 U.S. Dist. LEXIS 139668 (N.D. Ill. July 27, 2021) are inapposite because those defendants merely provided software to third-parties who knowingly and intentionally used it to collect the data. *Id.* at *1-4 (defendant sold facial-recognition security cameras to T.J. Maxx stores who installed and operated them to capture face scans); *Heard*, 440 F. Supp. 3d at 962-63 (defendant provided finger-scan medication-dispensing system to hospitals who used it to collect fingerprints); *accord Namuwonge v. Kronos, Inc.*, 418 F. Supp. 3d 279, 281-82, 285 (N.D. Ill. 2019) (defendant supplied biometric timekeeping system to plaintiff's employer, Brookdale, and "*Brookdale* used [it] to collect" fingerprints). Here, by contrast, Plaintiff alleges Living Proof "*uses* its technology" to "capture from the" photos scans of peoples' face geometry. *Compl.* ¶¶ 23, 31. Therefore, *Heard*, *Jacobs*, and *Namuwonge* are inapposite. So is *Martell v. X Corp.*, 2024 U.S. Dist. LEXIS 105610 (N.D. Ill. June 13, 2024), in which plaintiff "d[id] not allege that the hash process takes a scan of face geometry." *Id.* at *9.

## II. Living Proof Is Not Exempt From Following The Law Of Illinois.

Living Proof argues the issue under Illinois' extraterritoriality doctrine "is whether [it]

8

'collected, used, or stored' biometric identifiers/information in Illinois." *Mot.* at 10. That's incorrect. "Instead, the test is whether '*the circumstances relating to the transaction* occur[red] primarily and substantially' within Illinois." *Timmons v. Gemini Motor Transp., L.P.*, 2025 U.S. Dist. LEXIS 59414, at *18 (N.D. Ill. Mar. 30, 2025) (quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005)). Under *Avery*, the leading case on the extraterritoriality doctrine, "there is not a single formula or bright-line test for determining whether a transaction primarily and substantially occurred in Illinois." *Johns v. Paycor, Inc.*, 2025 U.S. Dist. LEXIS 59401, at *16-17 (S.D. Ill. Mar. 28, 2025). "Courts consider … the residency of the plaintiff, the location of the harm, where the communications between parties were sent and received, and where a company's policy is carried out." *Timmons*, 2025 U.S. Dist. LEXIS 59414 at *18.

It is well-established that "the pleading stage is not the right time" for this analysis. *Id.*; *accord Johns*, 2025 U.S. Dist. LEXIS 59401 at *19 (the inquiry is "best left for summary judgment"); *Amazon Web Servs.*, 2023 U.S. Dist. LEXIS 129517 at *19 (it's "'inappropriate for the motion to dismiss stage'") (quoting *Vance v. IBM*, 2020 U.S. Dist. LEXIS 168610, at *8 (N.D. Ill. Sep. 15, 2020)); *Wilk v. Brainshark, Inc.*, 631 F. Supp. 3d 522, 528 (N.D. Ill. 2022) ("[C]ourts frequently find it premature to dismiss claims … based upon the extraterritorial doctrine given the doctrine's fact-intensive inquiry. … So too here."). Indeed, it is reversible error to dismiss on extraterritoriality grounds under *Avery* unless the allegations "*defeat* application of Illinois law." *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011). That is certainly not the case here.

Plaintiff's allegations establish the circumstances of the transactions at issue here occurred primarily and substantially in Illinois. She and the class are Illinois residents who used Living Proof's Hair Quiz Feature in Illinois and uploaded their selfies to its website from Illinois. *Compl.* ¶¶ 4, 7, 10, 46, 48, 59. Living Proof conducts business in Illinois with Illinois consumers like

9

232918_3

Plaintiff and the class, it provided them access to its Hair Quiz Feature and related services in Illinois, and it captured their data while they were in Illinois. *Id.* ¶¶ 4, 9-10, 46. "The provision of access and services to [Plaintiff] and other Illinois users constitutes in-state activity by [Living Proof]." *See Colombo v. Youtube, LLC*, 679 F. Supp. 3d 940, 945 (N.D. Cal. 2023); *cf. Vance v. Amazon.Com, Inc.*, 2022 U.S. Dist. LEXIS 195303, at *23 (W.D. Wash. Oct. 17, 2022) ("*Amazon.com II*") (distinguishing cases such as this in which "defendant itself reached into Illinois to collect [plaintiffs'] photographs, scan the photographs, and/or generate facial measurements or templates"). As such, Living Proof's argument Plaintiff did not allege "any of Living Proof's … conduct occurred in Illinois" is baseless. *Mot.* at 10.[2]

As for harm, one type is omissions—Living Proof's failure to provide the written disclosures 15(b)(1) and (2) require, and obtain the signed releases 15(b)(3) requires. *See Rosenbach v. Six Flags Entm't Corp.*, 2019 IL 123186, ¶ 34 ("When a private entity fails to adhere to [BIPA's] statutory procedures, … [t]he precise harm the Illinois legislature sought to prevent is then realized."); *Compl.* ¶¶ 41, 43-44, 52-56, 70; 740 ILCS 14/15(b). These omissions occurred in Illinois, which is the only place Living Proof could have obtained Plaintiff's and the class members' informed consent. *See Avery*, 835 N.E.2d at 854 (holding "failure to disclose … occurred in Louisiana" where plaintiff was located); *In re Clearview AI, Inc., Consumer Priv. Litig.*, 585 F. Supp. 3d 1111, 1121 (N.D. Ill. 2022) ("defendants failed to provide notice to the Illinois subclass members in Illinois"); *Amazon.com I*, 525 F. Supp. 3d at 1308 ("The required disclosures or permissions would have been obtained from Illinois, and so any communication

---

[2] While Living Proof may argue the allegations do not establish its act of capturing face-geometry scans occurred in Illinois, this "draws too narrow a box around the conduct at issue." *See Wilk*, 631 F. Supp. 3d at 527-28 (rejecting argument violation "only occurs 'primarily and substantially' in Illinois if the alleged facial scanning occurred within Illinois"); *Colombo*, 679 F. Supp. 3d at 945 (that "YouTube's … data servers may be elsewhere … is not dispositive"); *Google*, 238 F. Supp. 3d at 1102 (concluding it "would not necessarily be dispositive" if defendant extracted the face geometry from the photos outside Illinois).

232918_3

would have necessarily involved Illinois."); *Microsoft I*, 525 F. Supp. 3d at 1293 (same); *Rivera v. Google*, 238 F. Supp. 3d at 1101 (because plaintiffs were in Illinois, "it was in Illinois where Google failed to provide [them] with required disclosures and … get [their] consent").

The other harm is the loss of their "right to privacy in and control over their biometric" data. *Rosenbach*, 2019 IL 123186, ¶ 33; *Compl.* ¶¶ 6, 57-58, 71. This right "vanishe[d] into thin air" when Living Proof "fail[ed] to adhere to" 15(b)'s requirements, *Rosenbach*, 2019 IL 123186, ¶ 34, which occurred when Plaintiff and the class used its Hair Quiz Feature in Illinois, so their loss of this right also necessarily occurred in Illinois. *Compl.* ¶¶ 4, 10, 46, 59.

Finally, the communications consist of: (a) Plaintiff and the class sending Living Proof selfies and their names, ages, and email addresses from Illinois; and (b) Living Proof providing them product recommendations they received in Illinois. *Compl.* ¶¶ 4, 26, 48, 50-51.

At the pleading stage, that is more than enough to satisfy *Avery*. *See Davis v. Jumio Corp.*, 2023 U.S. Dist. LEXIS 25170, at *3, *16-17 (N.D. Ill. Feb. 14, 2023) (holding plaintiff "plausibly alleged" "BIPA violations occurred primarily and substantially in Illinois" by alleging "he is an Illinois resident, … Jumio conducts businesses … in Illinois, and … he submitted a …photograph of his face … from Illinois"); *Kuklinski v. Binance Capital Mgmt. Co.*, 2023 U.S. Dist. LEXIS 59418, at *7-9, *25-26 (S.D. Ill. Apr. 4, 2023) (same because "Kuklinski is an Illinois resident," and "he downloaded the BAM application [which captured face geometry from selfie to verify identities] and created the BAM account [which required such identity-verification] while he was in Illinois"); *Monroy*, 2017 U.S. Dist. LEXIS 149604, at *15-16 (same by alleging plaintiff's photo "was uploaded to Shutterfly's website from a device … in Illinois … by a citizen of Illinois" and "Illinois … is where Shutterfly failed to obtain" consent—despite fact plaintiff was a Florida resident, Shutterfly was "a Delaware corporation headquartered in California," plaintiff "d[id] not

11

claim to have suffered any injury in Illinois," and it was "unclear where the actual scan of [his] face geometry took place"); *Timmons*, 2025 U.S. Dist. LEXIS 59414 at *18 (same by alleging "the harm happened when his biometric data was collected (without his consent) while driving in Illinois"); *Amazon Web Servs.*, 2023 U.S. Dist. LEXIS 129517 at *18-19 (same by alleging plaintiffs "submitted their images and IDs through ProctorU while in Illinois" and the "alleged injuries … occurred in Illinois"); *Mahmood v. Berbix, Inc.*, 2022 U.S. Dist. LEXIS 153010, at *2, *4 (N.D. Ill. Aug. 25, 2022) (same by "alleg[ing] [plaintiff] is an Illinois resident," plus "reasonable inference that she uploaded her Illinois Driver's License on Berbix's platform while she was in Illinois"); *In re Clearview*, 585 F. Supp. 3d at 1121 (same by alleging plaintiffs and class "are Illinois residents, … defendants failed to provide notice to [them] … in Illinois," and defendants conduct business in Illinois); *Theriot v. Louis Vuitton N. Am., Inc.*, 645 F. Supp. 3d 178, 184 (S.D.N.Y. 2022) ("no basis" to dismiss as plaintiffs were "Illinois residents who used the Virtual Try-On tool while in Illinois" and "they did not receive the proper disclosures or provide the requisite consent … when they accessed [defendant's] website in Illinois").

Even ignoring Living Proof's conduct in Illinois, its extraterritoriality argument still fails because all of the other circumstances relevant under *Avery* occurred in Illinois:

> As *Avery* cautions, "focusing solely on [one circumstance] … can create questionable results" where "the bulk of the circumstances … occur within Illinois." *Avery*, 216 Ill.2d at 186 …. *Avery*'s warning is particularly apt here because the functionality and reach of modern online services … cannot be compartmentalized into neat geographic boxes. … Among other problematic outcomes, it would effectively gut the ability of states … to apply their consumer protection laws to residents for online activity that occurred substantially within their borders.

*In re Facebook Biometric Info. Privacy Litig.*, 326 F.R.D. 535, 547-48 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019); *accord Colombo*, 679 F. Supp. 3d at 945 (that "YouTube's headquarters … may be elsewhere … is not dispositive."). As the Ninth

12

232918_3

Circuit has explained, "[g]iven the General Assembly's finding that '[m]ajor national corporations have selected … locations in this State as pilot testing sites for new applications of biometric-facilitated financial transactions,' … it is reasonable to infer that the General Assembly contemplated BIPA's application to individuals who are located in Illinois, even if some relevant activities occur outside the state." *Patel*, 932 F.3d at 1276 (quoting 740 ILCS 14/5(b)).

Living Proof's reliance on *Neals v. Par Tech. Corp.*, 419 F. Supp. 3d 1088 (N.D. Ill. 2019) is misplaced. The plaintiff there failed to allege she used the biometric timeclock in Illinois and did not allege the location of her employer, so the only Illinois connection was her residency. *Id.* at 1091. But the court emphasized that "[i]f plaintiff were able to so allege, then she would" satisfy *Avery*. *Id.* Here, Plaintiff fills that gap by alleging she used the Hair Quiz Feature in Illinois. *Compl.* ¶¶ 4, 7, 10, 46, 48, 59. That's sufficient under *Neals*.

*McGoveran v. Amazon Web Services., Inc.*, 2021 U.S. Dist. LEXIS 189633 (D. Del. Sept. 30, 2021)—an outlier that courts have rejected—changes nothing. *McGoveran* refused to consider where the disclosures would've been made and consent obtained since those things didn't occur. *Id.* at *10. In refusing to consider those omissions, it reasoned—circularly—that plaintiffs did not trigger defendant's disclosure obligations under BIPA because their allegations supposedly did not satisfy *Avery*. *Id.* at *10-11. But **all** "other courts, including the Illinois Supreme Court, have found the location of purported failures or omissions to be relevant in analyzing extraterritoriality." *Amazon Web Servs.*, 2023 U.S. Dist. LEXIS 129517 at *18-19 (thus rejecting *McGoveran*); *Jumio*, 2023 U.S. Dist. LEXIS 25170 at *19 (same; "*McGoveran*, a district court case from outside of this Circuit, represents a minority view regarding what a BIPA plaintiff must allege."); *see also Straits*, 900 F.3d at 369. Furthermore, *McGoveran* improperly conflated the extraterritoriality doctrine with personal jurisdiction. 2021 U.S. Dist. LEXIS 189633 at *11-12 (relying on Illinois district

13

court's prior "dismissal of the related action for lack of personal jurisdiction," misstating there is a "relationship between the personal jurisdiction and extraterritoriality inquiries"). In short, *McGoveran* is unsound and was wrongly decided, and this Court should reject it.

## III. Plaintiff Alleges Living Proof's Violations Were Reckless And Intentional, But That Is Not A "Claim" And Such Allegations Are Unnecessary.

Implicitly conceding that Plaintiff sufficiently alleges its violations were negligent, Living Proof argues she "failed to state a claim for enhanced statutory damages" for reckless or intentional violations. *Mot.* at 10-11. This argument fails as it "starts from a faulty premise: that BIPA's relief provisions create distinct legal claims. They don't." *Wordlaw v. Enter. Leasing Co. of Chi., LLC*, 2020 U.S. Dist. LEXIS 239230, at *20 (N.D. Ill. Dec. 21, 2020). "[R]equests for liquidated damages are not 'claims,' … but demands for relief," and a plaintiff "need not plead facts … that show his entitlement to these precise forms of relief." *Sosa v. Onfido, Inc.*, 600 F. Supp. 3d 859, 874 (N.D. Ill. 2022); *Figueroa*, 454 F. Supp. 3d at 786 ("recklessness offers a basis for greater liquidated damages, not for a separate claim").

A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts," and "Rule 12(b)(6) doesn't permit piecemeal dismissals of parts of claims." *Cothron v. White Castle Sys.*, 467 F. Supp. 3d 604, 615 (N.D. Ill. 2020). Thus, "if the complaint plausibly pleads violations of Section 15(b) … then, even absent specific allegations about … mental state … , it has stated a claim." *Id.*; *accord Hazlitt I*, 500 F. Supp. 3d at 751 ("mental states need not be alleged for the purpose of stating a plausible claim under BIPA," collecting cases); *e.l.f. Cosm.*, 2024 U.S. Dist. LEXIS 94318 at *25 (same); *Stauffer v. Innovative Heights Fairview Heights, LLC*, 480 F. Supp. 3d 888, 907 (S.D. Ill. 2020) ("references to negligent, reckless, and intentional violations only relate to what the prevailing party may recover for each violation, which is not before the Court presently"). As detailed above, Plaintiff alleges a plausible 15(b) claim.

14

232918_3

"At the pleading stage, plaintiff need do no more." *Wordlaw*, 2020 U.S. Dist. LEXIS 239230 at *21.

In any event, Plaintiff filed this lawsuit in 2025, alleging Living Proof made no effort to comply with 15(b)'s requirements that took effect in 2008. *Compl.* at 1; *id.* ¶¶ 1, 4, 13, 18, 34, 41-44, 52-56, 66, 72-73. "[B]y alleging that [Living Proof] has made no effort to comply with BIPA, [Plaintiff] has pleaded facts to suggest [Living Proof] acted with … recklessness, or intent." *Peatry v. Bimbo Bakeries USA, Inc.*, 2020 U.S. Dist. LEXIS 32577, at *16 (N.D. Ill. Feb. 26, 2020); *Sherman v. Brandt Indus. USA*, 500 F. Supp. 3d 728, 736 (C.D. Ill. 2020) (alleging defendant "made no effort to comply with BIPA for years 'is enough … to make … recklessness plausible'"); *Hazlitt I*, 500 F. Supp. 3d at 752 (allegations defendant "collect[s] faceprints … in violation of BIPA more than eleven years after BIPA's enactment …are sufficient to create an inference that the conduct was … reckless"); *Neals*, 419 F. Supp. 3d at 1092 ("BIPA took effect more than ten years ago, and … [defendant] has made no effort to comply with its requirements. This is certainly enough … to make … recklessness plausible."); *Rogers v. BNSF Ry. Co.*, 2019 U.S. Dist. LEXIS 188961, at *12 (N.D. Ill. Oct. 31, 2019) (same); *Burlinski v. Top Golf USA, Inc.*, 2020 U.S. Dist. LEXIS 161371, at *23 (N.D. Ill. Sep. 3, 2020) (same); *see also Howe v. Speedway LLC*, 2024 U.S. Dist. LEXIS 176263, at *31 (N.D. Ill. Sep. 29, 2024) ("BIPA is indeed a strict liability statute and requires no … mental state to establish a violation").

## CONCLUSION

For all of the foregoing reasons, Living Proof's motion to dismiss should be denied.

Dated: July 23, 2025

Respectfully submitted,

GISELLE RODRIGUEZ, individually and on behalf of all others similarly situated, Plaintiff

By: /s/ Theodore H. Kuyper

Keith J. Keogh
Theodore H. Kuyper
KEOGH LAW, LTD.
55 W. Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-1092
keith@keoghlaw.com
tkuyper@keoghlaw.com

Scott D. Owens (*Admitted Pro Hac Vice*)
Mathew Bobulsky (*Admitted Pro Hac Vice*)
SCOTT D. OWENS, P.A.
2750 N. 29th Avenue, Suite 209A
Hollywood, Florida 33020
(954) 589-0588
scott@scottdowens.com
matthew@scottdowens.com

John R. Habashy (*Pro Hac Vice to be filed*)
LEXICON LAW
633 W. 5th Street, 28th Floor
Los Angeles, California 90071
(213) 223-5900
john@lexiconlaw.com

***Attorneys for Plaintiff and the Putative Class***

## **CERTIFICATE OF SERVICE**

I hereby certify that, on July 23, 2025, I caused a copy of the foregoing ***Plaintiff's Response in Opposition to Defendant's Motion to Dismiss*** to be served upon all counsel of record via electronic filing using the CM/ECF system.

      /s/ Theodore H. Kuyper

232918_3