IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GISELLE RODRIGUEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LIVING PROOF, INC.<br><br>Defendant. | Case No. 1:25-cv-04180<br><br>Hon. Jorge L. Alonso<br>Hon. Heather K. McShain |

**DEFENDANT LIVING PROOF, INC.'S REPLY IN SUPPORT OF
ITS MOTION TO DISMISS**

## **TABLE OF CONTENTS**

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT .................................................................................................................................. 1

I. Plaintiff Fails to Adequately Allege a Violation Under Section 15(b) of BIPA. ............... 1

II. Plaintiff Fails to Overcome the Extraterritoriality Doctrine. ............................................. 5

III. Plaintiff Fails to Allege That Living Proof's Violations Were Reckless and Intentional and is Therefore Not Entitled to the Requested Relief. ..................................... 7

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Agnew v. Nat'l Collegiate Athletic Ass'n*,
   683 F.3d 328 (7th Cir. 2012) ...................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................................................................3, 4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
   835 N.E.2d 801 (Ill. 2005).......................................................................................................5

*Carpenter v. McDonald's Corp.*,
   580 F. Supp. 3d 512 (N.D. Ill. 2022) .......................................................................................3

*In re Clearview AI, Inc., Consumer Priv. Litig.*,
   585 F. Supp. 3d 1111 (N.D. Ill. 2022) .....................................................................................6

*In re Facebook Biometric Info. Priv. Litig.*,
   326 F.R.D. 535 (N.D. Cal. 2018).............................................................................................4

*Hazlitt v. Apple Inc.*,
   500 F. Supp. 3d 738 (S.D. Ill. 2020) .......................................................................................2

*Jones v. Microsoft Corp.*,
   649 F. Supp. 3d 679 (N.D. Ill. 2023) .......................................................................................3

*King v. PeopleNet Corp.*,
   No. 21 CV 2774, 2021 WL 5006692 (N.D. Ill. Oct. 28, 2021) ................................................2

*Martell v. X Corp.*,
   No. 23 C 5449, 2024 WL 3011353 (N.D. Ill. June 13, 2024) ..............................................3, 4

*Namuwonge v. Kronos, Inc.*,
   418 F. Supp. 3d 279 (N.D. Ill. 2019) .......................................................................................8

*Patel v. Facebook, Inc.*,
   932 F.3d 1264 (9th Cir. 2019) .................................................................................................4

*Rivera v. Google Inc.*,
   238 F. Supp. 3d 1088 (N.D. Ill. 2017) .....................................................................................6

*Rogers v. CSX Intermodal Terminals, Inc.*,
   409 F. Supp. 3d 612 (N.D. Ill. 2019) .......................................................................................7

*Swanson v. Citibank, N.A.*,
   614 F.3d 400 (7th Cir. 2010) ...................................................................................................2

*Vance v. Amazon.com, Inc.*,
   525 F. Supp. 3d 1301 (W.D. Wash. 2021)................................................................................6

*Vance v. Microsoft Corp.*,
   525 F. Supp. 3d 1287 (W.D. Wash. 2021)................................................................................6

**Statutes**

740 ILL. COMP. STAT. § 15(b) (2008) .........................................................................................7

**Rules and Regulations**

FED. R. CIV. P. 8. ..........................................................................................................................3

## INTRODUCTION

Plaintiff's Complaint against Living Proof, Inc. under the Illinois Biometric Information Privacy Act ("BIPA") is fundamentally deficient and should be dismissed. Plaintiff's Response merely reiterates her theory that by prompting users to upload a selfie for a *hair* quiz, Living Proof collected biometric information and biometric identifiers in violation of BIPA. But Plaintiff's claim must be *plausible*, which cannot be established with conclusory allegations lacking concrete factual allegations that Living Proof actually collected biometric information. Moreover, Plaintiff's selective presentation of the Hair Quiz interface omits critical context, further undermining the plausibility of her claim. In addition, Plaintiff's allegations fail to establish that any purported violation of BIPA occurred "primarily and substantially" in Illinois, as required by the state's extraterritoriality doctrine. Finally, Plaintiff does not, and cannot, demonstrate that she is entitled to heightened damages under BIPA.

For these reasons, the Complaint should be dismissed in its entirety, or, at a minimum, Plaintiff should be required to amend her pleading to cure these fundamental deficiencies.

## ARGUMENT

### I. Plaintiff Fails to Adequately Allege a Violation Under Section 15(b) of BIPA.

Contrary to what Plaintiff claims in her Opposition, Living Proof in no way "conceded" that Plaintiff *adequately* alleged that Living Proof captured scans of facial geometry. ECF No. 37 ("Opp.") at 3[1]. Rather, Plaintiff's allegations about capturing a scan of facial geometry are so generic that they could be copied and pasted into any complaint about a website involving a selfie. Indeed, there is nothing about Plaintiff's facial geometry allegations that connect them to the Hair Quiz Feature specifically. Plaintiff merely alleges that she uploaded a selfie as part of a

---

[1] All citations to Plaintiff's Response in Opposition to the Motion to Dismiss use the pagination in the footer of that document.

hair quiz and then speculates that Living Proof must have captured her facial geometry, without any factual basis for that conclusion. Moreover, Plaintiff's allegation that Living Proof "admits" to collecting biometric information is wholly unsupported (Opp. at 2, 4, 8)—there is no citation, document, or factual basis for this claim in the Complaint. Such conclusory allegations are not entitled to any weight at the pleading stage.

None of the cases cited by Plaintiff establish that such generic and conclusory pleading is sufficient to survive a motion to dismiss. In those cases, the complaints described the specific technology, how it operated, and how it necessarily involved the collection of biometric identifiers. In other words, the plaintiffs in those cases "g[a]ve enough details about the subject matter of the case to present a story that holds together," as the Seventh Circuit has required. *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

For example, in *King v. PeopleNet Corp.*, which Plaintiff relies on for the proposition that the Court should accept her allegation as true that Living Proof "captured" and "obtained" facial geometry (Opp. at 3), the court there highlighted that the operative complaint alleged: "As part of her job, [plaintiff] was required to clock in and out of shifts using PeopleNet's face scanner" and that "[d]uring each scan, [the] device collected King's biometric identifiers, converted them into an electronic format, and transmitted that information to PeopleNet." *King v. PeopleNet Corp.*, No. 21 CV 2774, 2021 WL 5006692, at *2 (N.D. Ill. Oct. 28, 2021). Plaintiff's Complaint here does not reach the same level of specificity, and the *King* case specifically involved a *face* scanner that identified employees for the purpose of tracking their time. *Id*.

Likewise, in *Hazlitt v. Apple Inc.*, also cited by Plaintiff (Opp. at 4), the plaintiffs alleged specifically that Apple's Photos app "employ[ed] a proprietary software and facial recognition technology to scan individual face geometries from a user's photographs creating a unique

2

'faceprint' for every person detected" and that the app "use[d] facial recognition technology to add frequently detected faces to the user's [ ] album . . . ." *Hazlitt*, 500 F. Supp. 3d 738, 742 (S.D. Ill. 2020). Such specific allegations involving facial recognition technology were enough to enable the court to accept as true the allegation that the defendant had collected a facial geometric scan.

Here, however, Plaintiff has not explained—and cannot explain—why the Court should accept the logical leap that analyzing a photo of someone's *hair* as part of providing *hair* product recommendations means Living Proof collected protected information under BIPA. Plaintiff mischaracterizes Living Proof's argument, suggesting Living Proof is improperly requiring her to plead why Living Proof "needed" facial geometry or demanding that she establish the probability of a violation at the pleading stage. That misses the point. Plausibility under Rule 8 requires more than the rote recitation that a selfie was uploaded and, therefore, a scan of facial geometry must have occurred. Without factual allegations connecting the use of the Hair Quiz to the actual collection of biometric identifiers as defined by BIPA, Plaintiff's claim is purely speculative. And courts routinely reject complaints that simply parrot statutory language without factual support showing how the alleged conduct plausibly falls within the statute's scope. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Martell v. X Corp.*, No. 23 C 5449, 2024 WL 3011353, at *3 (N.D. Ill. June 13, 2024) (dismissing BIPA claim where plaintiff failed to allege facts showing the technology actually scanned face geometry, rather than merely processing a photo); *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 519 (N.D. Ill. 2022) (rejecting allegations regarding disclosure, redisclosure, or dissemination as parroting BIPA's language); *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 685 (N.D. Ill. 2023) (same). Indeed,

if Plaintiff's approach were accepted, a plaintiff could allege that any website that allows a user to upload a selfie was operating in violation of BIPA, regardless of the actual function or purpose of the tool—an outcome that is neither plausible nor consistent with the statutory text or intent. Plaintiff cannot shoot first and hope to figure out a basis for a cause of action later through discovery. *See Iqbal*, 556 U.S. at 678-79 ("Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

Moreover, Plaintiff's speculation about possible uses for facial analysis or facial geometry, such as identifying the boundaries of hair and facial features (Opp. at 7), does not plausibly plead that Living Proof actually captured facial geometry. The mere assertion that facial geometry was "needed" to perform a facial analysis is not a substitute for factual allegations that such an analysis actually occurred. Further, the mere processing of an image to distinguish hair from face does not equate to the collection of biometric identifiers, and courts have recognized that not every use of a photograph or image implicates BIPA. *See Martell*, 2024 WL 3011353 at *3; *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 542 (N.D. Cal. 2018), *aff'd sub nom*. *Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019) (noting for purposes of the initial proposed class that "uncontested facts establish[ed] that uploading a photo did not necessarily result in the collection of biometric data"). In any event, these speculative assertions are not even pleaded in her Complaint.

Finally, a critical deficiency in Plaintiff's pleading is the selective inclusion of only certain screenshots from the Hair Quiz flow. Noticeably absent from the Complaint are the other screens and any information, disclosures, or requests for consent that would have appeared before upload, when clearly there are other screens, as highlighted and explained in Living Proof's opening memorandum. *See* Mem. in Support of MTD at 2-4. This omission deprives

4

the Court of the full context necessary to assess the plausibility of Plaintiff's BIPA claim. Without the complete set of screens (which are clearly in Plaintiff's possession, as shown by the progress dots on the bottom of each screen she has elected to include in her Complaint, while omitting others), it is impossible for this Court to determine what information or disclosures were provided to users, or whether any alleged collection of biometric data occurred at all.

Because Plaintiff's selective inclusion of screenshots deprives the Court of the full context necessary to assess the plausibility of her BIPA claim, Defendant respectfully requests that, should the Court decline to dismiss the Complaint in its entirety, Plaintiff be required to amend her Complaint to include all relevant screens from the Hair Quiz flow. This is necessary to cure the pleading deficiency and allow the Court to properly evaluate whether Plaintiff has stated a plausible claim under BIPA.

## II.     Plaintiff Fails to Overcome the Extraterritoriality Doctrine.

Plaintiff's Complaint also independently fails under Illinois's extraterritoriality doctrine. Plaintiff's opposition improperly conflates her own location with the location of Defendant's conduct. But for BIPA to apply, as Plaintiff acknowledges, "the circumstances relating to the transaction must occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 854 (Ill. 2005).

While Plaintiff attempts to deconstruct the elements of the Hair Quiz Feature to manufacture additional connection points with Illinois (*e.g.* Opp. at 9-10 (Plaintiff "used" the Feature in Illinois; "uploaded a selfie" in Illinois; received "access" to the Feature in Illinois)), the reality is that Plaintiff is relying entirely on her allegation that she, and the putative class, are Illinois residents who accessed the Hair Quiz feature while physically present in Illinois. But even in the cases on which Plaintiff primarily relies, where courts denied motions to dismiss on extraterritoriality grounds, the location or residency of the plaintiff was not dispositive. Rather,

5

courts that meaningfully engage with an extraterritoriality analysis consider whether the plaintiffs have "alleged myriad connections to Illinois *beyond the residence of the plaintiff*," *Campana*, 2024 WL 2809838 at *2 (emphasis added). In *Rivera v. Google Inc.*, 238 F. Supp. 3d 1088, 1101 (N.D. Ill. 2017), cited by Plaintiff, the court highlighted that the plaintiffs alleged that their photographs were taken in Illinois, and that the photographs were allegedly "automatically uploaded in Illinois to the cloud-based Google Photos service . . . from an Illinois-based Internet Protocol ('IP') address." In *In re Clearview AI, Inc., Consumer Priv. Litig.*, the court noted that "plaintiffs maintain[ed] that defendants have contracted *with hundreds of Illinois entities*, both public and private." 585 F. Supp. 3d 1111, 1121 (N.D. Ill. 2022) (emphasis added). And in both *Amazon* and *Microsoft,* cited by Plaintiff, the complaints sufficiently alleged that the defendants conducted business in Illinois or otherwise used the data collected for business in Illinois. *Vance v. Microsoft Corp.*, 525 F. Supp. 3d 1287, 1293 (W.D. Wash. 2021) ("Plaintiffs allege that Microsoft conducts 'extensive business' in Illinois involving their facial recognition products"); *Vance v. Amazon.com Inc.*, 525 F. Supp. 3d 1301,1308 (W.D. Wash. 2021). The same courts even conceded that "[i]t is certainly possible that with more factual refinement around this complex issue, the circumstances around [defendant's] attainment, possession and use of the [ ] dataset will reveal that the alleged violations did not occur primarily in Illinois." *See Amazon.com Inc.*, 525 F. Supp. 3d at 1309; *Microsoft Corp.*, 525 F. Supp. 3d at 1293.

Recognizing that the mere location of Plaintiff is insufficient to trigger the application of BIPA, Plaintiff attempts to reframe the relevant conduct as "omissions" by Living Proof that

occurred in Illinois.² But that argument is circular, and wrongly assumes that BIPA imposes duties based on the location of the plaintiff, rather than the conduct of the entity allegedly collecting the data. Those courts that have found such types of allegations to be sufficient are wrongly decided because, under that logic, any internet-based entity would be subject to Illinois law simply because its content was accessed in Illinois—a position that is overbroad and unworkable. Allowing a plaintiff's location to dictate the locus of a defendant's conduct would effectively render the extraterritoriality doctrine a nullity.

Plaintiff's claims therefore lack the requisite specificity for purposes of determining that *Living Proof's* violative conduct occurred in Illinois. For these additional reasons, the Court should dismiss the Complaint.

### III. Plaintiff Fails to Allege That Living Proof's Violations Were Reckless and Intentional and is Therefore Not Entitled to the Requested Relief.

Plaintiff in her Opposition relies primarily on cases that state that a plaintiff need not allege the mental state of the defendant to be entitled to state a claim under BIPA. Opp. at 14-15 (collecting cases). But courts *should* dismiss or strike requests for enhanced statutory damages where the plaintiff relies purely on conclusory statements, as Plaintiff does here for both her underlying BIPA claim and the relief she seeks.³ *See, e.g.*, *Rogers v. CSX Intermodal Terminals, Inc.*, 409 F. Supp. 3d 612, 619 (N.D. Ill. 2019) (dismissing claim for $5,000 in statutory damages where conclusory statement was insufficient to plead intent or recklessness of defendant);

---

² Plaintiff's claimed "omissions" of the requisite disclosures and written consent are, again, apparently based on her selective choice of screenshots from the Hair Quiz Feature within the Complaint.

³ To be clear, Living Proof did not and does not "concede" that Plaintiff adequately alleged Living Proof's alleged violations of BIPA were negligent, contrary to what Plaintiff claims in her Opposition, given that Plaintiff has not even adequately pleaded a violation of BIPA and cannot recover *at all*.

*Namuwonge v. Kronos, Inc.,* 418 F. Supp. 3d 279, 286 (N.D. Ill. 2019) (dismissing claim for $5,000 in statutory damages because "abstract statements regarding damages" failed to establish defendant "acted recklessly or intentionally"). Plaintiff has not offered *anything* in her Complaint that establishes that she is entitled to such relief—she only summarily states that "[Living Proof's] conduct intentionally or recklessly violated BIPA with respect to Plaintiff and the Class members." (Compl. ¶ 72.) In her Opposition, Plaintiff asserts that she has alleged Living Proof made "no effort to comply with 15(b)'s requirements that took effect in 2008," referencing several paragraphs in the Complaint (Opp. at 15). However, none of the cited paragraphs—or any part of the Complaint—actually allege that Living Proof made no efforts to comply with BIPA. Instead, the Complaint merely claims that Living Proof did not comply with BIPA in connection with the Hair Quiz and notes that BIPA has been in effect since 2008. Any attempts by Plaintiff to add additional allegations into her pleading now should be rejected, as "[i]t is a basic principle that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Agnew v. Nat'l Collegiate Athletic Ass'n*, 683 F.3d 328, 348 (7th Cir. 2012).

In any event, Plaintiff ignores the fact that the Hair Quiz, as shown in her own selectively included screenshots, included a statement that the selfie "will not be stored," sought affirmative consent, and linked to the privacy policy. (Compl. ¶ 22.) Moreover, Plaintiff's omission of the full sequence of screens—particularly those that would have appeared before the selfie upload—deprives the Court of a full and accurate picture of the user experience and the disclosures provided, which are directly relevant to the plausibility of any claim of reckless or intentional conduct. The Court should therefore deny Plaintiff any relief she seeks pursuant to the enhanced damages prong of BIPA, or at a minimum, require her to amend to include the full sequence of

8

screens so the Court can properly assess whether there is any factual basis for the assertion that Living Proof acted with the requisite mental state for enhanced statutory damages under BIPA.

## CONCLUSION

For the foregoing reasons, Living Proof, Inc. respectfully requests that the Court grant Living Proof's Motion to Dismiss the Complaint in its entirety, and afford any other relief as warranted.

Dated: August 13, 2025

Respectfully submitted,

*/s/ Kristen C. Rodriguez*
Kristen C. Rodriguez (6300697)
DENTONS US LLP
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 768-6700
Fax: (212) 768-6800
Email: kristen.rodriguez@dentons.com

Lyndsey M. Wajert (6340204)
DENTONS US LLP
233 South Wacker Drive
Suite 5900
Chicago, IL 60606
Tel: (312) 876-8000
Fax: (312) 876-7934
Email: lyndsey.wajert@dentons.com

Michael J. Duvall (6291523)
DENTONS US LLP
601 South Figueroa Street
Suite 2500
Los Angeles, CA 90017
Tel: (213) 623-9300
Email: michael.duvall@dentons.com

*Attorneys for Defendant*
*Living Proof, Inc.*

9

**CERTIFICATE OF SERVICE**

      I hereby certify that on August 13, 2025, a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system, which provided electronic service to all counsel of record.

                                       */s/ Kristen C. Rodriguez*
                                       Kristen C. Rodriguez